IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATIEDRA ARGRO,** | **CIVIL ACTION** |
| Plaintiff, | |
| v. | |
| **MARRIOTT INTERNATIONAL, INC.,** | **NO. 13-5507** |
| **DETROIT HOTEL SERVICES, LLC,** | |
| **MARRIOTT HOTEL SERVICES, INC.,** | |
| **and LOEWENSTEIN, INC.,** | |
| Defendants. | |

**DuBois, J.**                                                                                                                   **June 6, 2014**

## M E M O R A N D U M

### I.   INTRODUCTION

This personal-injury action arises out of plaintiff, Katiedra Argo's, fall from an allegedly defective chair, manufactured by defendant Lowenstein, Inc. ("Lowenstein"), while she was in her hotel room at the Detroit Marriott at Renaissance Center, Detroit, Michigan. On October 17, 2013, plaintiff commenced the instant action against Marriott International, Inc. and Marriot Hotel Services, Inc. (collectively the "Marriott Defendants"), Detroit Hotel Services, LLC ("DHS"),[1] and Lowenstein.

Presently before the Court are (1) Marriott Defendants' Motion to Dismiss and Marriott Defendants and Detroit Hotel Services, LLC's Motion to Transfer, (2) Plaintiff's Motion for Enlargement of Time to Respond to and/or Supplement Plaintiff's Response to Defendants' Motion and for Leave to Conduct Discovery, and (3) Defendant Lowenstein, Inc.'s Motion to Join Defendant Marriott Intentional Inc. and Marriott Hotel Services, Inc.'s Motion to Dismiss. For the reasons set forth below, the Court denies all three Motions.

---

[1] DHS is the managing company for the Detroit Marriott at Renaissance Center.

**II.     BACKGROUND**

Plaintiff avers that, on July 26, 2012, while staying as a guest at the Detroit Marriott at Renaissance Center, located in Detroit, Michigan, the chair on which plaintiff was sitting "suddenly and without warning, . . . separated from the base causing her to fall backwards onto the floor." Compl. ¶¶ 7-8, 11. As a result of this fall, plaintiff allegedly "sustained severe and serious permanent personal injuries." *Id.* at ¶ 11.

Plaintiff brings negligence claims (Count I) against the Marriott Defendants and DHS, alleging, *inter alia*, that they failed to maintain and inspect the chair from which plaintiff fell. Plaintiff brings negligence (Count II), strict liability in tort (Count III), and breach-of-warranty (Count IV) claims against Lowenstein, alleging, *inter alia*, that they manufactured and sold the chair in question despite its "dangerous and defective condition." *Id.* ¶ 28. According to plaintiff's Complaint, all four defendants "regularly conduct[] business in the City and County of Philadelphia." *Id.* ¶¶ 2-5.

**III.    MOTION TO TRANFER VENUE**

First, the Court considers the Marriott Defendants and DHS's Motion to Transfer Venue to the Eastern District of Michigan under 28 U.S.C. § 1404(a). "[I]n deciding a motion under § 1404(a), the Court must consider both the public and private interests affected by the transfer." *Automated Med. Prods. Corp. v. Int'l Hosp. Supply Corp.*, No. 97-cv-2328, 1998 WL 54351, at *5 (E.D. Pa. Jan. 30, 1998). Those private interests include: the parties' choice of forum; the place where the claim arose; the convenience of the parties and witnesses; and the location of relevant books and records. *Id.* The public interests include: the enforceability of the judgment; practical considerations that would make the trial "easy, expeditious, or inexpensive;" the states' relative interests in resolving

the controversy in a local forum; the relative court congestion in each forum; and the respective courts' familiarity with the applicable state law. *Id.* "The burden is on the moving party to establish that a balancing of proper interests weigh in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

As an initial matter, the Court concludes that several of these factors are neutral, and defendants appear to concede as much.[2] The Marriott Defendants and DHS argue, however, that some private and some public factors weigh heavily in favor of transfer. The Court addresses these private and public factors in turn.

### A.  Private Factors

The Marriott Defendants and DHS argue that four private factors weigh in favor of transfer: (1) where the claim arose, (2) the moving defendants' choice of forum, (3) the convenience of the witnesses, and (4) access to relevant books and records. Plaintiff concedes, and the Court agrees, that the first two of these four factors weigh in favor of the transfer. Thus, the Court focuses on the latter two, the import of which are disputed.

When ruling on a § 1404(a) motion, a court may consider the convenience of the witnesses "only to the extent that the witnesses may actually be unavailable for trial in one fora." *Jamara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Defendants assert, in their briefing, that "the material fact witnesses all reside in Michigan" and "would be unavailable and unwilling to testify without a subpoena in the Eastern District of Pennsylvania." Mem. of Law in Supp. of Marriott Defs.' Mot. to Dismiss & Marriott Defs. & DHS's Mot. to Transfer at 12-13 [hereinafter Marriott Defs. & DHS's Mem. of Law]. However, this conclusory assertion — even with defendants' belated identification of

---

[2] For example, defendants do not make arguments concerning the enforceability of a judgment or the court congestion in each forum.

specific witnesses — does not constitute evidence sufficient to establish these witnesses' unavailability. "[T]he Third Circuit has explicitly stated that defendants have the burden of proof to 'support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a).'" *Sec. Police & Fire Prof'ls of Am. Ret. Fund v. Pfizer, Inc.*, No. 10-cv-3105, 2011 WL 5080803, at *7 (D.N.J. Oct. 25, 2011) (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973)). Because defendants have proffered no such evidence, the Court concludes this factor is neutral.

Likewise, the Court rejects defendants' argument that the location of relevant books and records weighs in favor of transfer. Again, the Court may consider this factor "only to the extent [these records] may be unavailable in one fora." *Leatherman v. Cabot Oil & Gas Corp.*, No. 12-cv-3783, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) (DuBois, J.) (quoting *Cole v. McGuire Bros. Const., Inc.*, No. 05-cv-678, 2005 WL 3077902, at *7 (D.N.J. Nov. 15, 2005)). Even if defendants' records are located in Michigan, the Court has no reason to doubt defendants' ability to transport them to the Eastern District of Pennsylvania for trial. Accordingly, this factor weighs neither for nor against transfer.

In light of Court's conclusion that the convenience of the witnesses and the location of books and records are neutral, the only private factors that support defendants' position are the fact that that the claim arose in Detroit, Michigan, and the moving defendants have chosen that forum. These two factors are insufficient to overcome the heavy presumption afforded to plaintiff's choice of litigating in her home forum, which is paramount in deciding a motion to transfer venue and should not be lightly disturbed.[3] *See, e.g.*, *Endless*

---

[3] Further, the Court rejects defendants' argument that, because "[n]one of the

*Pools, Inc. v. WaveTec Pools Inc.*, 362 F. Supp. 2d 578, 586 (E.D. Pa. 2005); *Sparkler v. Home Infusion Solutions*, No. 13-cv-3969, 2013 WL 6476501, at *4 (E.D. Pa. Dec. 9, 2013) (DuBois, J.) ("[D]efendant's preference to litigate this suit in the District of New Jersey . . . is entitled to considerably less weight than is plaintiff's." (citation omitted)).

Further, in weighing the private factors, the Court also must consider that the financial condition of plaintiff is more limited than that of the Marriott Defendants and DHS. *See Jumara*, 55 F.3d at 879 (noting that the Court must consider "the convenience of the parties as indicated by their relative physical and financial condition"). Both the Marriott Defendants and DHS have "current and ongoing presence[s] in th[is] District" and are "more than financially capable of defending against [p]laintiff's claim here." *Traa v. Marriott Corp.*, No. 05-cv-4290, 2006 WL 2319182, at *4 (D.N.J. Aug. 9, 2006). In contrast, plaintiff is an individual resident of Pennsylvania and "far less financially capable" of traveling in order to conduct this litigation. *Id.* Thus, the Court concludes that transfer to the Eastern District of Michigan "would simply convert a slight inconvenience to [defendants], into a more significant inconvenience to [p]laintiff." *Id.* For all these reasons, the private factors weigh heavily against transfer.

### B. Public Factors

Although the private factors weigh against transfer, the Court also must address three public factors that defendants cite in support of their position: (1) the efficiency and expense

---

operative facts occurred in [this District]," "[p]laintiff's choice of forum should be accorded no deference." *See* Marriott Defs. & DHS's Mem. of Law at 10. "Even though [plaintiff's] choice is entitled to less weight than it might otherwise be given because . . . it is not the situs of the relevant events, it is still the most important factor the Court considers." *Raffel v. Monarch Dental Corp.*, No. 99-cv-4571, 1999 WL 1212184, at *2 (E.D. Pa. Dec. 15, 1999); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (noting "that a plaintiff's choice of a proper forum is a paramount consideration in *any* determination of a transfer request" (emphasis added)).

of trial; (2) the states' relative interests in adjudicating the case in a local forum; and (3) the familiarity of the trial judges with the applicable state law.

First, the Marriott Defendants and DHS argue that "[t]rial of this particular case would be more efficient and less expensive if it took place in Michigan rather than in Pennsylvania, as the majority of the witnesses . . . . [and] [t]he chair at issue in this case [are] in Michigan." Marriott Defs. & DHS's Mem. of Law at 13-14. However, while the moving defendants' witnesses may be located in Michigan, plaintiff has identified a number of witnesses who are located in Pennsylvania.[4] Further, defendants have not argued that it would be unduly burdensome to transport the chair to this District for trial.

Second, the Marriott Defendants and DHS argue that transfer is necessary to protect Michigan's interest in deciding local controversies at home. However, this argument overlooks the fact that both Michigan and Pennsylvania have interests in this dispute. While Michigan has an interest in regulating corporate conduct within its borders, Pennsylvania has an interest in "protecting the rights of one of its residents." *See, e.g.*, *Traa*, 2006 WL 2319182, at *5 (noting that Maryland, the state in which plaintiff sustained her injuries, did not have an interest in the case "outweigh[ing] New Jersey's interest in protecting the rights of one of its residents"). Thus, this factor is neutral.

Third, defendants argue that Michigan law will apply whether the matter remains in Pennsylvania or is transferred to Michigan. Plaintiff does not dispute this contention, but

---

[4] Moreover, numerous courts have rejected defendants' position that the location of plaintiff's witnesses must be disregarded because they are not expected to testify as to liability. Marriott Defs. & DHS's Mem. of Law at 12. *See, e.g.*, *Traa v. Marriott Corp.*, No. 05-cv-4290, 2006 WL 2319182, at *5 (D.N.J. Aug. 9, 2006); *Catalano v. BRI, Inc.*, 724 F. Supp. 1580, 1584 (E.D. Mich. 1989); *Harvey v. Marriott Corp.*, 680 F. Supp. 1289, 1291 (E.D. Wis. 1988); *Hammond v. John Q. Hammons Hotel Mgmt. LLC*, No. 09-cv-652, 2010 WL 302234, at *1 (W.D. Okla. Jan 20, 2010); *Jungkind v. K-Mart Corp.*, No. 87-cv-7739, 1988 WL 11543, at *2 (E.D. Pa. Feb. 11, 1988).

defendants have not argued that the questions of state law are complex, let alone that there is a substantive difference in the applicable tort laws of the two states.  *See, e.g.*, *Koken v. Lexington Ins. Co.*, No. 04-2539, 2004 WL 2473432, at *4 (E.D. Pa. Nov. 2, 2004) (denying a motion to transfer because, *inter alia*, the court would have no difficulty applying foreign state law that was not particularly complex or novel).  Accordingly, this factor also weighs neither for nor against transfer.

In light of the fact that the public factors at issue are neutral and the private factors weigh heavily against transfer, the Court concludes that defendants have failed to carry their burden of showing that the balance of factors weighs in favor of transfer.  Accordingly, the Marriott Defendants and DHS's Motion to Transfer is denied

## IV. MARRIOTT DEFENDANTS' MOTION TO DISMSISS

Next, the Court turns to the Marriott Defendants' Motion to Dismiss.  To survive a motion to dismiss brought under Rule 12(b)(6), a civil plaintiff must allege facts that "raise a right to relief above the speculative level."  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

In this case, the Marriott Defendants seek dismissal of the action on the ground that they are improper parties to the action because neither defendant "own[s] or manage[s] the

Detroit Marriott at Renaissance Center and thus ha[s a] duty to [p]laintiff." Marriott Defs. & DHS's Mem. of Law at 4. In so arguing, the Marriott Defendants do not contend that plaintiff has plead insufficient facts to establish a relationship of actual agency,[5] but, rather, that the Marriott Defendants can affirmatively disprove the existence of such a relationship through an affidavit, attached to their Motion to Dismiss, of Deborah Nichols, an Assistant Secretary of Marriot International Inc. In response, plaintiff argues that "a 12(b)(6) motion is solely to test the legal sufficiency of the allegations in plaintiff's Complaint," and the Marriott Defendants "have failed to show the allegations in plaintiff's Complaint are legally insufficient." Pl.'s Resp. in Opp. to Defs., Marriott Int'l, Inc., Detroit Hotel Servs., LLC & Marriott Hotel Serv., Inc.'s Mot. to Dismiss at 5-6 [hereinafter Pl.'s Resp. in Opp.].

As an initial matter, the Court addresses the parties' dispute over whether the Court may consider Nichols's affidavit. Defendants argue, without citing any authority for the proposition, that "[t]he use of an affidavit to describe Marriott's corporate structure and to delineate the ownership of the Hotel, all matters of public record, does not automatically force the Court to convert the Motion to Dismiss into one for summary judgment." Marriott Defs. & DHS's Mem. of Law at 4. Plaintiff asserts that, "[p]ursuant to the Federal Rules of Civil Procedure 12(b)(6) and the Advisory Committee Notes, matters extraneous to the pleadings, such as defendants' affidavit, may not be considered in deciding a motion to dismiss." Pl.'s Resp. in Opp. at 2.

The Court rejects defendants' position on this issue. "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except in limited circumstances. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

---

[5] Because the Marriott Defendants have not made make this argument, the Court deems it waived.

1997).  Although one such circumstance is when a court "take[s] judicial notice of matters of public record," *Smith v. Pallman*, 420 Fed. App'x 208, 212 (3d Cir. 2011), this exception is inapplicable to the present case.  Not only is the affidavit itself not a public record, but consideration of the Nichols's affidavit would necessarily be for the truth of the allegations contained therein, which is impermissible use of judicial notice under applicable precedent.[6] *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 40, 426 (3d Cir. 1999) (noting that, in adjudicating a motion to dismiss, a court may take judicial notice of a public record, not for the truth of the facts recited therein, but for the public record's existence).

Perhaps even more importantly, however, is that Nichols's statements, even if taken as true, are insufficient to absolve the Marriott defendants of liability.  The appropriate standard for establishing actual agency is not whether the alleged principal in fact exerts control over the matter of work; "rather[,] it is the *right* to control which is determinative." *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 782 (3d Cir. 1978).  Nichols does not attest to any right to control; she only states that the Marriott defendants "do[] not own, manage, operate, and/or otherwise control the Detroit Marriot at the Renaissance Center." Nichols Aff. ¶¶ 5-6.  *See, e.g.*, *Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-cv-20976, 2008 WL 2557503, at *4 (S.D. Fla. June 23, 2008) (noting that even if the court

---

[6] Indeed, even putting aside the rules of judicial notice, the Court could not take Nichols's statements as true because the question of whether a parent "controls" a subsidiary is a legal conclusion, not a factual assertion to which a Marriott representative can attest.  *See, e.g.*, *Gevo, Inc. v. Butamax(TM) Adv. Biofuels LLC*, No. 12-cv-1724, 2013 WL 3381258, at *3 (D. Del. July 8, 2013) ("[T]he issue of whether a parent 'controls' subsidiaries ultimately involves a legal conclusion based on underlying facts."); *Waterhout v. Associated Dry Goods, Inc.*, 835 F.2d 718, 720-21 (8th Cir. 1987) ("Stix's affidavits to the effect that Stix had no right to control Metro employees and that the employees were employed solely by Metro and not as agents of Stix state only conclusions of law, and are not sufficient to sustain a motion for summary judgment." (citation omitted)).

9

were to credit the "self-serving affidavit" of defendant's in-house counsel, it would be "[i]nsufficient to adjudicate an agency relationship" because "she talks primarily about *actual* control, but fails to testify [defendant's] authority or *right* to control"). Thus, for this additional reason, Nichols's affidavit is insufficient to support dismissal.

Absent Nichols's affidavit, all that defendants have relied upon in support of their Motion are a handful of cases, which the Court concludes are inapposite. For example, although the district court in *McCaughey v. Unum Provident Corp.*, No. 03-cv-6571, 2004 WL 792366, at *1-*2 (E.D. Pa. March 19, 2004) dismissed the plaintiff's complaint for naming an improper party to the action, that decision was premised on "plaintiff's concession" that the incorrect defendant had been named. Likewise, defendants' reliance on *Rucker v. Marriot International Inc.*, No. 03-cv-4729, 2004 WL 32946 (E.D. Pa. Jan. 2, 2004) and *Clark v. Marriott Environmental Corp.*, No. 93-cv-3279, 1994 WL 6884 (E.D. Pa. Jan. 6, 1994) is misplaced, as both cases involved motions for summary judgment, in which the courts could — and did — consider papers outside of the pleadings.[7] And, in a fourth case cited by defendants, *Shared Communications Services of 1800-80 JFK Blvd. Inc. v. Bell Atlantic Properties Inc.*, 692 A.2d 570, 572 (Pa. Super. Ct. 1997), the court did not adjudicate a pre-trial motion of any sort, but, rather, post-trial motions for a new trial and

---

[7] The Court notes that defense counsel cites *Rucker v. Marriott International Inc.* for the proposition that "[a] pleading is legally insufficient if it names improper parties that cannot be held liable to the plaintiff," *see* Marriott Defs. & DHS's Mem. of Law. at 4 — the same proposition for which he cited the case while representing Hilton Worldwide Inc. in *Gilberton v. Hilton Worldwide Inc.*, 2013 WL 1352146, at *4 (D.N.J. April 2, 2013).

In denying the motion to dismiss in *Gilbertson*, Judge Wolfson explained to him that *Rucker v. Marriot International Inc.* was inapposite to the motion to dismiss before her because "[t]he *Rucker* court was faced with a motion for summary judgment in which the named defendant, Marriott International Inc., had presented uncontroverted evidence that the hotel in question was neither owned nor operated by the named defendant." 2013 WL 1352146, at *4. Precisely the same rationale applies to the present case.

judgment notwithstanding the verdict.  Because these cases do nothing to buttress the Marriott Defendants' position, their Motion to Dismiss is denied.

Finally, the Court briefly addresses the parties' dispute as to whether plaintiff may alternatively proceed under the doctrine of apparent agency.  In her Response to the Marriott Defendants' Motion to Dismiss, plaintiff asserts that, even if the doctrine of actual agency does not apply to her claims, the hotel operator acted with apparent authority.  In Reply, the Marriott Defendants argue that (1) apparent authority is "a doctrine that has no bearing on the instant case," and (2) plaintiff's Complaint "does not . . . plead reliance upon any action by [the] Marriott Defendants."  Reply in Supp. of Marriott Defs.' Mot. to Dismiss at 2-3.  Although the Court rejects the Marriott Defendants' position that the doctrine of apparent authority has no possible application to plaintiff's claims,[8]  the Marriott Defendants are correct that this theory is insufficiently plead.  Thus, to the extent plaintiff wants to alternatively proceed under the doctrine of apparent agency, the Court grants her leave to file an amended complaint asserting such a theory if warranted by the facts and applicable law.

## V.    LOWENSTEIN, INC.'S MOTION TO DISMISS

Defendant Lowenstein has filed a Motion, in which it "join[s] in [the Marriott Defendants'] Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing all claims asserted by [p]laintiff . . . against Defendant Lowenstein,

---

[8] If plaintiff ultimately is able to produce evidence that the Marriott Defendants "acted in a manner that would lead a reasonable person to conclude that the operator of the [hotel] was an agent of [the Marriott Defendants] and [she] acted in reliance of that representation," the Marriott Defendants potentially could be held liable, even absent proof of actual agency.  *See, e.g.*, *Sims v. Marriott Int'l Inc.*, 184 F.2d 616, 617 (W.D. Ky. 2001); *see also Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 673, 676 (N.D. Ill. 2008); *Loyle v. Hertz Corp.*, 940 A.2d 401, 408 (Pa. Super. Ct. 2007).

Inc." Def. Lowenstein's Mot. at 1.  However, the Marriott Defendants' Motion to Dismiss, which is solely predicated on the agency relationship — or lack thereof — between the Marriott Defendants and DHS, is wholly irrelevant to plaintiff's claims against Lowenstein. Thus, Lowenstein's Motion is denied.

## VI.     CONCLUSION

For the foregoing reasons, the Court denies (1) the Marriott Defendants and DHS's Motion to Transfer Venue, (2) the Marriott Defendants' Motion to Dismiss, and (3) Lowenstein's Motion to Dismiss.  To the extent that plaintiff wants to proceed on an apparent-agency theory, she is granted leave to file, within twenty days, an amended complaint asserting such a theory if warranted by the facts and applicable law.  Finally, Plaintiff's Motion for Enlargement of Time to Respond to and/or Supplement Plaintiff's Respond to Defendants' Motion and for Leave to Conduct Discovery is denied as moot.

An appropriate order follows.